## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-22680-CIV-MORENO
### United States Magistrate Judge Torres

NELVIS VELAZQUEZ, M.D.,

      Plaintiff,

vs.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY AND UNUM
GROUP,

      Defendants.

_____/

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff, Nelvis Velazquez, M.D., through undersigned counsel, respectfully submits the following decisions as supplemental authority in support of her Response in Opposition to Defendant's Motion to Dismiss Amended Complaint: *In re: Aluisi v. Elliott Manufacturing Co.,* 2009, WL 565544 (E.D.Cal.), and *In re: McCauley v. First Unum Life Insurance Company,* 551 F.3d 126.

Respectfully submitted,

s./Michael M. Tobin, Esq.
Michael M. Tobin
Florida Bar No. 081540
LAW OFFICES OF MICHAEL M. TOBIN, P.A.
Attorneys for Plaintiff
9400 South Dadeland Boulevard, Penthouse 5
Miami, FL 33156
Telephone No. (305) 445-5475
Facsimile No. (305) 554-5479
miamilaw@snappydsl.net

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that on this 7th day of April, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

By s./Michael M. Tobin
                Michael M. Tobin

Westlaw

Slip Copy                                                    Page 1
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

Only the Westlaw citation is currently available.

United States District Court,
E.D. California.
Terry ALUISI, Plaintiff,
v.
ELLIOTT MANUFACTURING CO., INC. PLAN, et
al., Defendants.
**No. 1:04-CV-5373 AWI SMS.**

March 5, 2009.

David Malcolm Gilmore, Gilmore Wood Vinnard &
Magness, Fresno, CA, for Plaintiff.

Horace Wade Green, Joanne Michelle Ryan, Green &
Humbert, San Francisco, CA, for Defendants.

**ORDER CONCERNING THE COURT'S
CONSIDERATION OF EVIDENCE OUTSIDE
THE RECORD**

**ORDER SETTING MARCH 16, 2009
TELEPHONIC CONFERENCE FOR 2:30 P.M.**

ANTHONY W. ISHII, Chief Judge.

**BACKGROUND**

*1 In this action Plaintiff requests that the court review

Defendant's denial of long term disability benefits
pursuant to ERISA. The second amended complaint
alleges that Unum Life Insurance Company of America
("Unum"), on behalf of Defendant Elliott Manufacturing
Co., Inc. as the ERISA Plan and the ERISA Plan
Administrator ("Elliott"), improperly denied Plaintiff's
long term disability benefits under ERISA.

On December 19, 2008, the court and the parties held a
pretrial conference. At the conference, the court and the
parties determined that motions in limine were necessary
prior to the bench trial in this action. The parties dispute
whether Plaintiff can present, and the court can consider,
evidence outside the administrative record. On December
29, 2008, the court issued its pretrial order.

On January 16, 2009, Plaintiff filed a brief in which
Plaintiff contends the court can consider evidence outside
the administrative record. On January 26, 2009,
Defendants filed response. Defendants contend outside
evidence cannot be considered. On February 2, 2009,
Plaintiff filed a reply.

On February 10, 2009, the court held a hearing. At the
hearing, the court heard oral arguments concerning what,
if any, evidence outside the record the court can consider.
This memorandum opinion follows.

**LEGAL STANDARD**

Where a plan grants the administrator or fiduciary
discretionary authority to determine eligibility for benefits,
trust principles make a deferential standard of review
appropriate. *Metropolitan Life Ins. Co. v. Glenn*, ---U.S.
----, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008); *Burke
v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**PLAINTIFF'S EXHIBIT A**

Slip Copy                                                                    Page 2
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

1016, 1024 (9th Cir.2008); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.2006). If "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Glenn*, 128 S.Ct. at 2348 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *Nolan v. Heald College*, 551 F.3d 1148, 1153 (9th Cir.2009); *Burke*, 544 F.3d at 1024. As is the case here, an employer has a conflict of interest when it both funds the plan and evaluates claims, and the court must take this conflict into account when it reviews the decision to deny benefits. *Glenn*, 128 at 2348; *Firestone*, 489 U.S. at 115; *Burke*, 544 When the court reviews the lawfulness of benefit denials, the court will often "take account of several different considerations of which a conflict of interest is one." *Glenn*, 128 S.Ct. at 2351. The court is "to temper the abuse of discretion standard with skepticism 'commensurate' with the conflict." *Nolan*, 551 F.3d at 1153; *Abatie*, 458 F.3d at 959, 965, 969. The Supreme Court explained as follows:

> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. *See Langbein, supra,* at 1317-1321 (detailing such a history for one large insurer). It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits. *See Herzel & Colling,* The Chinese

Wall and Conflict of Interest in Banks, 34 Bus. Law 73, 114 (1978) (recommending interdepartmental information walls to reduce bank conflicts); Brief for Blue Cross and Blue Shield Association as Amicus Curiae 15 (suggesting that insurers have incentives to reward claims processors for their accuracy); cf. generally *J. Mashaw,* Bureaucratic Justice (1983) (discussing internal controls as a sound method of producing administrative accuracy).

**\*2** *Glenn*, 128 S.Ct. at 2351.

The general rule is that "when applying an abuse of discretion standard to an ERISA plan, the district court's review is limited to the administrative record." *Burke*, 544 F.3d at 1027-28 (quoting *Abatie*, 458 F.3d at 970). However, the court may consider evidence outside the administrative record "to decide the nature, extent and effect on the decision-making process of any conflict of interest" *Nolan*, 551 F.3d at 1153; *Burke*, 544 F .3d at 1028; *Abatie*, 458 F.3d at 970. "Similarly, the district court may consider evidence outside the administrative record if it determines that procedural irregularities prevented the full development of the administrative record." *Burke*, 544 F.3d at 1028; *Abatie*, 458 F.3d at 970.

## DISCUSSION

Plaintiff seeks to introduce two types of evidence. First, Plaintiff seeks to introduce evidence showing Unum's history of biased claim denials. Plaintiff contends this evidence will be derived from other published cases and sources relating to Unum. Second, Plaintiff seeks to introduce testimony by his primary treating physicians and Plaintiff to establish that if Defendant had thoroughly questioned them or conduct an independent medical evaluation, Defendants would have easily seen Plaintiff is disabled.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                           Page 3
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

## A. Unum's History of Biased Claim Denial

Plaintiff seeks to introduce the fact that UNUM has a long, well-documented history of biased claims administration. Plaintiff asks that the court consider several court cases that have referenced Unum's claims administration history. Defendant makes several evidentiary objections to this court's consideration of these other courts findings.

### 1. Judicial Findings of Biased Claims Administration

Several court cases have cited to Unum's claims administration history. Concerning Unum's prior history of biased claims administration, the Ninth Circuit has stated:

This nationwide vote of no confidence seems to have been precipitated by the cupidity of one particular insurer, UnumProvident Corp., which boosted its profits by repeatedly denying benefits claims it knew to be valid. UnumProvident's internal memos revealed that the company's senior officers relied on ERISA's deferential standard of review to avoid detection and liability.

*Saffon*, 511 F.3d at 1210. The Supreme Court has also recognized Unum's history. In discussing facts that can show a conflict of interest and what weight district courts have given these facts, the Supreme Court has found that a conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. *Glenn,* 128 S.Ct. at 2351 (citing *John H. Langbein,* Trust Law As Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Denials Under ERISA. 101 Nw. U.L.Rev. 1315 (2007)

(hereinafter "Langbein Article")). The insurance company referred to by the Supreme Court is Unum. In *Harper v. UNUM Life Ins. Co. of America,* 2008 WL 5245971 (E.D.Cal.2008), this court considered the fact that Unum has a documented history of biased claims administration as a finding of fact. This court cited to *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 511 F.3d 1206, 1210 (9th Cir.2008); *CowderCowin v. Unum Life Ins. Co. of Am.,* 560 F.Supp.2d 1006, 1013 (W.D.Wash.2008); *Glenn,* 128 S.Ct. at 2351 (citing Langbein Article).

*3 Defendant contends that these court findings are based on only one law review article, the Langbein Article. Defendant complains that the Langbein Article is biased and not supported by the evidence. The court has reviewed the Langbein Article and finds that many of its conclusions are based on other courts' factual findings. The Langbein Article cites to cases that have addressed Unum's denial practice. The Langbein Article cites to court opinions in which the courts have found, under the facts at issue in the case before the court, there was selective review of the record, see *Moon v. UNUM Provident Corp.,* 405 F.3d 373, 381 (6th Cir.2005), "lack of objectivity and an abuse of discretion by UNUM," see *Lain v. UNUM Life Ins. Co.,* 279 F.3d 337, 347 (5th Cir.2002), misuse of ambiguous test results, see *Stup v. UNUM Life Ins. Co. of Am.,* 390 F.3d 301, 310 (4th Cir.2004), and claims evaluation practices that defied common sense, see *Dandurand v. UNUM Life Ins. Co. of Am.,* 284 F.3d 331, 338 (1st Cir.2002), and "bordered on outright fraud," see *Watson v. UnumProvident Corp.,* 185 F.Supp.2d 579, 585 (D.Md.2002).See Langbein Article at 1320. While these cases concern only the facts before them, the Langbein Article cites to another court that reviewed many cases and found a disturbing pattern. See *id.*(citing *Radford Trust v. First Unum Life Ins. Co.,* 321 F.Supp.2d 226, 247 (D.Mass.2004). The court finds that the Langbein Article contains sufficient citation to court cases for the court to find the fact Unum has a history of biased claims administration supported by case authority. For example, in *Radford Trust,* the District Court of Massachusetts reviewed numerous cases and concluded

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

that Unum has a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics. *Radford Trust.* 321 F.Supp.2d at 247-49 & n. 20.

In light of the court findings concerning Unum, the issue for the court becomes whether the court can adopt other court's findings, both cited in the Langbein Article and citing the Langbein Article, to establish Unum's biased history. Defendant takes the position that the court cannot simply cite to other court findings about Unum's history to establish a biased history. While not explicitly discussed by Defendant, Defendant appears to take the position that each court must make its own findings on Unum's history based on whatever discovery the plaintiff obtains regarding Unum's past and present practices. The court finds that such individualized repetitive factual findings about Unum's *history* are not required under the unique inquiry the court is required to make under ERISA.

Numerous courts, including several Circuit Courts of Appeal, have considered Unum's history of biased claims review by merely citing to the Langbein Article and other court cases without requiring specific data. These courts have considered Unum's history as a given fact without citing any of the evidentiary concerns raised by Defendants. For example, the Second Circuit has considered Unum's biased history as established. In discussing the weight to be given to a conflict of interest, the Second Circuit reasoned as follows:

*4 This case also involves another relevant consideration specifically referenced in *Glenn:*"[W]here an insurance company administrator has a history of biased claims administration."*Id.* at 2351.First Unum is no stranger to the courts, where its conduct has drawn biting criticism from judges. A district court in Massachusetts wrote that "an examination of cases involving First Unum ... reveals a disturbing pattern of erroneous and arbitrary benefits denials, bad faith

contract misinterpretations, and other unscrupulous tactics." *Radford Trust v. First Unum Life Ins. Co.* 321 F.Supp.2d 226, 247 (D.Mass.2004), *rev'd on other grounds,* 491 F.3d 21, 25 (1st Cir.2007). That court listed more than thirty cases in which First Unum's denials were found to be unlawful, including one decision in which First Unum's behavior was "culpably abusive." *Id.* at 247 n. 20.Also, First Unum's unscrupulous tactics have been the subject of news pieces on "60 Minutes" and "Dateline," that included harsh words for the company. *Id.* at 248-49.First Unum has fared no better in legal academia. *See* John H. Langbein, *Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA,* 101 Nw. U.L.Rev. 1315 (2007). In light of First Unum's well-documented history of abusive tactics, and in the absence of any argument by First Unum showing that it has changed its internal procedures in response, we follow the Supreme Court's instruction and emphasize this factor here. Accordingly, we find First Unum's history of deception and abusive tactics to be additional evidence that it was influenced by its conflict of interest as both plan administrator and payor in denying [the plaintiff's] claim for benefits.

*McCauley v. First Unum Life Ins. Co.,* 551 F.3d 126,137 (2nd Cir.2008). The Eighth Circuit has also found Unum's claims history as established. However, in the case before it, the Eighth Circuit concluded this history insufficient to show an abuse of discretion when considering all the factors. The Eight Circuit reasoned as follows:

".... The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. See *Langbein, supra,* at 1317-1321 (detailing such a history for one large insurer)."*Glenn,* at 2351 (citing *John H. Langbein,* Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

Nw. U.L.Rev. 1315, 1323-1324 (2007)).

Even though no conflict of interest could be assumed pre-*Glenn,* [the plaintiff] argued in his brief that a palpable conflict exists because UNUM engaged in unlawful procedures in handling his claim. The procedures he refers to are those that were subject to a multistate examination of the claims handling practices of UNUM Life and other subsidiaries of UNUM Provident. These practices are the subject of the law review article quoted by the Supreme Court in the passage above. In September 2003, the Department of Labor and state regulators began a joint examination of claim files and claim administration and policy manuals from these companies to determine if their disability income claims handling practices reflected systemic unfair claim settlement practices. The examiners found several areas of concern, including excessive reliance upon in-house medical professionals, unfair construction of attending physician or independent medical exam reports, failure to evaluate the totality of the claimant's medical condition, and inappropriate burdens placed on claimants to justify their eligibility for benefits. The result was a plan of corrective action implemented through a regulatory settlement agreement and consent orders entered into with the states.

**\*5** We are instructed by *Glenn* to give importance to this conflict of interest, "perhaps ... great importance," *Glenn* at 2351, depending upon how closely the other factors are balanced. The findings of the investigation are troubling, and we do not minimize their import. Taking into account the remaining factors discussed below, we conclude that there is not a sufficiently close balance for the conflict of interest to act as a tiebreaker in favor of finding that UNUM abused its discretion. See *id.*

*Wakkinen v. UNUM Life Ins. Co. of America,* 531 F.3d 575, 581-582 (8th Cir.2008). Several district courts,

including this one, have found Unum's history of biased claims review is demonstrated by the Langbein article, other court cases, and state insurance commissions' investigations. See, e.g., *Harper v. UNUM Life Ins. Co. of America,* 2008 WL 5245971 (E.D.Cal.2008); *Eitel v. UNUM Life Ins. Co. of America,* 2008 WL 5186537, \*4 (W.D.Wash.2008); *Welch v. UNUM Life Ins. Co. of America,* 2008 WL 3876319, \*4 (D.Kan.2008); *Carder-Cowin v. Unum Life Ins. Co. of America,* 560 F.Supp.2d 1006, 1013 (W.D.Wash.2008).

*Glenn* itself seems to imply that a history of biased claims administration can be established by other court findings. In his concurrence in *Glenn,* Chief Justice Roberts agreed with the majority that evidence of a history of biased claims administration should be considered. Chief Justice Roberts stated as follows:

It is the actual motivation that matters in reviewing benefits decisions for an abuse of discretion, not the bare presence of the conflict itself. Consonant with this understanding, a conflict of interest can support a finding that an administrator abused its discretion only where the evidence demonstrates that the conflict actually motivated or influenced the claims decision. Such evidence may take many forms. It may, for example, appear on the face of the plan, see *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 7, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (offering hypothetical example of a plan that gives "a bonus for administrators who denied benefits to every 10th beneficiary"); it may be shown by evidence of other improper incentives, see *Armstrong v. Aetna Life Ins. Co.,* 128 F.3d 1263, 1265 (C.A.8 1997) (insurer provided incentives and bonuses to claims reviewers for "claims savings"); or it may be shown by a pattern or practice of unreasonably denying meritorious claims, see *Radford Trust v. First Unum Life Ins. Co.,* 321 F.Supp.2d 226, 247 (D.Mass.2004) (finding a "pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics").

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

Page 6

*Glenn,* 128 S.Ct. at 2354-55 (Roberts, J., Concurring). Chief Justice Robert's cite to *Radford Trust,* implies that a biased history can be found by reviewing other court opinions.

Based on the above authority, the court finds that Defendant's biased history can be based on the findings of other courts, including those of the Supreme Court. The court declines to find that *Glenn* requires a plaintiff in every case to prove a biased history by way of statistics and data obtained through discovery. The court finds that a biased history can be established by the findings of other courts. Based on the numerous courts that have cited to Unum's biased history of claims' administration, the court will consider this history without further evidence at the bench trial.

### 2. Objection Based on Hearsay

*6 Defendants contends that this court cannot consider the findings of other courts because they are hearsay. The court recognizes that one court has found that evidence of Unum's biased history based on the Langbein Article and other court cases is inadmissible on hearsay grounds. *See Bartholomew v. Unum Life Ins. Co. of America,* 588 F.Supp.2d 1262, 1267-68 (W.D.Wash.2008). However, based on the numerous courts to find Unum's biased history is established, the court respectfully disagrees with the finding that this evidence is hearsay which the court cannot consider.

Regardless, assuming Unum's biased history is subject to a hearsay objection, the court finds it is admissible under Rule 807 of the Federal Rule of Evidence. Rule 807 provides:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed.R.Evid. 807. "A court's most important inquiry under this Rule is whether the proffered evidence has trustworthiness equivalent to that of the enumerated hearsay exceptions." *F.T.C. v. Figgie Intern., Inc.,* 994 F.2d 595, 608 (9t' Cir.1993).

For the reasons discussed above, the evidence that Unum has a biased history is relevant to whether Unum had a conflict of interest and whether it abused its discretion in this case. The probative value of the judicial findings is more probative on the issue of biased history than any other evidence Plaintiff can procure through reasonable efforts. For Plaintiff to show this history through a review of Unum's other claims grants and denials would be burdensome as it would require significant discovery, expert interpretation of data, and potentially mini trials as the parties fought over whether Unum's conduct when denying other claims was proper. Because of the difficulty of this court reviewing other claims denials to show a history of biased claims administration, the interests of justice support admission. The hearsay exceptions exist because they have some circumstantial guarantee of accuracy and trustworthiness. *Idaho v. Wright,* 497 U.S.

Slip Copy                                                                          Page 7
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). An established fact found by the Supreme Court, Second Circuit, Eight Circuit, Ninth Circuit, this court, and several other district courts has a sufficient indica of reliability, accuracy, and trustworthiness to support the purpose behind the Federal Rules of Evidence. Finally, the notice to the opposing party factor is satisfied in this case because Defendant has know for some time that Plaintiff would seek to introduce this evidence, and Defendant already has identified potential rebuttal evidence. Thus, to the extent other courts' findings that Unum has a history of biased claims administration is subject to a hearsay objection, the court finds that it is admissible under the residual exception to the hearsay rule.

### 3. Defendant's Objection Based on Rule 403

*7 Defendant next contends that the prejudicial effect of considering the findings made in other cases about Unum's history outweighs any potential probative value under Rule 403 of the Federal Rule of Evidence. Rule 403 allows the court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403(b) The court has broad discretion in assessing admissibility under Rule 403. Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1124 (10th Cir.1995).

The probative value of evidence that Unum has a history of bias has great relevance on whether Defendant had a conflict of interest. Because this is a bench trial and because there are ways for Defendant to argue and to show that such a history had little or no influence in this case, the court's consideration of these findings would not be prejudicial to Defendant. Defendant's objection based on Rule 403 is overruled.

### 4. Defendant's Objection Based on Rule 404

Defendant contends that this evidence is improper character evidence under Rule 404 of the Federal Rules of Evidence. Rule 404(b) prohibits evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. However, Rule 404(b) allows such evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Plaintiff is not attempting to introduce the evidence of Unum's history as character evidence. Rather, Plaintiff's evidence falls under Rule 406 of the Federal Rules of Evidence. Rule 406 provides:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed.R.Evid. 406. Because Defendant does not argue this evidence is inadmissable under Rule 406 and confines its objection to Rule 404, Defendant's objection fails.

Defendant's history falls within Rule 406 of the Federal Rule of Evidence. Courts have found that a corporation's business practice may be admitted as habit or routine practice. "[E]vidence of a routine practice is highly probative, and persuasive. It is particularly persuasive in the business context because the need for regularity in business and the organizational sanctions which may exist when employees deviate from the established procedures give extra guarantees that the questioned activity followed the usual custom." Mobil Exploration and Producing U.S., Inc. v. Cajun Const. Services, Inc., 45 F.3d 96, 99 (5th

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

Cir.1995) (citing McCormick on Evidence § 195, at 351 (4th ed.1992) (internal cite omitted). The Tenth Circuit has found that evidence of an insurance company's "pervasive, consistent pattern" of rescinding insurance contracts without determining whether there was good cause to do so was admissible under Rule 406, *Vining on Behalf of Vining v. Enterprise Financial Group, Inc.,* 148 F.3d 1206, 1219 (10th Cir.1998). The Fifth Circuit has found that evidence showing a defendant's routine practice of short loading its trucks was admissible to infer that it loaded its deliveries to plaintiff consistent with that practice. *Mobil Exploration,* 45 F.3d. at 100-01. The Seventh Circuit has held that evidence showing it was the routine practice of insurance agents to give oral assurances that varied from the written insurance policy was admissible to establish that such conduct transpired in a particular instance. *Rosenburg v. Lincoln American Life Ins. Co.,* 883 F.2d 1328, 1336 (7th Cir.1989). Based on Rule 406, the court finds the judicial recognition of a biased history admissible to show Defendant's routine practice. Defendants' objection on Rule 404 is overruled and this evidence will be considered under Rule 406.

**5. Defendant's Objection Based on Court's Findings on Summary Judgment**

*8 Defendant contends that on summary judgment this court found that there was no evidence the individuals who reviewed Plaintiff's claim were biased. As such, Defendant contends the court has made a final finding of fact that any biased history did not influence its decision and this fact has already been decided in Defendant's favor. Defendant incorrectly assumes that any factual findings made on summary judgment are conclusive for trial. On summary judgment, the court only considered evidence provided to the court in the parties' statements of undisputed facts. These facts included Defendant's evidence taken from outside the record showing the decision makers in this case had no incentive to deny benefits. The court's decision to only review those undisputed facts submitted by the parties has been recently

affirmed by the Ninth Circuit, which has found that when examining evidence outside the administrative record in an ERISA case, a district court is required to apply traditional rules of summary judgment including requirement that evidence be viewed in light most favorable to nonmoving party. *Nolan v. Heald College,* 551 F.3d 1148, 1154 (9th Cir.2009).

At the bench trial the court is not bound to the facts provided by the parties at summary judgment, the court can consider the whole administrative record. In addition, the court does not have to view the evidence in the light most favorable to the nonmoving party. Thus, any factual finding made on summary judgment are not final for the purposes of trial, and such findings do not preclude the consideration of evidence outside the record at trial.

**6. Rebuttal Evidence**

If the court determines that it will consider Unum's biased history as found by other courts, Defendant requests permission to show that any history of bias did not influence the denial of Plaintiff's benefits. The fact an insurance company has been found to have a history of biased claims administration does not always mean the conflict of interest is of great importance. The Supreme Court has found that the conflict is of little importance "where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits." *Glenn,* 128 S.Ct. at 2351.

In its brief, Defendant asks for leave to introduce rebuttal evidence. Defendant requests to be allowed to introduce the testimony of Carolyn Brooks, Director of Unum's Long Term Disability Claims Unit. Based on *Glenn,* the court will allow Defendant to introduce evidence

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

Page 9

concerning Defendant's decision making in this case. On summary judgment, the court allowed Defendant to introduce similar evidence by way of declaration to show no conflict of interest influenced the decision making in this case. Nothing in the parties' briefs indicates any reason such evidence could not be submitted by declaration for the court to consider when making its final findings of fact and conclusions of law in this action. As long as Defendant's evidence is relevant to what Defendant has done to reduce potential bias and to promote accuracy, along with showing that no bias influenced the decision in this case, Ms. Brook's declaration will be considered.

### B. Plaintiff's Testimony and His Doctor's Testimony

*9 Plaintiff also seeks to introduce testimony by himself and his primary treating physicians. Plaintiff contends that this testimony will show that if Unum had thoroughly questioned Plaintiff and his primary treating physicians or conducted an independent medical evaluation, Unum would have easily seen that Plaintiff remained disabled.

### 1. Testimony Going to Merits of Plaintiff's Disability

Testimony from Plaintiff and his treating physicians is inadmissible to the extent such evidence goes to the merits of Plaintiff's case, i.e. whether Plaintiff is in fact disabled. In deciding whether the plan administrator's determination that Plaintiff is not disabled under the plan was clearly erroneous, the court is limited to the record before the plan administrator, and the court cannot order the administrator to take more evidence. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir.2006). Thus, Plaintiff may not present evidence by his treating physicians and himself on the issue of Plaintiff's disability.

### 2. Testimony Showing Conflict of Interest-Failure to

### Properly Investigate Plaintiff's Claims

At the hearing, Plaintiff explained that he desires to admit the testimony from Plaintiff's treating physicians because Unum did not give proper consideration to Plaintiff's treating physicians' opinions that Plaintiff was disabled. Plaintiff claims that his treating physicians were not given enough evidence from the administrative record to respond to Unum's additional evidence. Plaintiff argues that he should be able to show what Plaintiff's treating physicians would say if they had been better interviewed by Unum.

The court finds that if Unum's investigation was so minimal that it never followed up with questions to Plaintiff's treating physicians, Plaintiff's evidence of what his treating physicians would have told Unum if properly asked may be relevant to show a conflict of interest. The court may admit extrinsic evidence "when the irregularities have prevented full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct." *Abatie,* 458 F.3d at 972-73. For example, in *Dishman v. UNUM Life Ins. Co. of America,* 269 F.3d 974 (9th Cir.2001), the Ninth Circuit affirmed the district court's decision to allow the introduction of evidence outside of the administrative record because the insurance company had precluded the plaintiff from presenting relevant evidence prior to terminating benefits or in a subsequent appeal, and as such, the insurance company essentially failed to conduct an administrative review. *Id.* at 985-86. In *Friedrich v. Intel Corp.,* 181 F.3d 1105, 1110 (9th Cir.1999), the plan's appeals committee had before it only the treating physicians disorganized and unexplained raw date but also was given drafted opinions from the plan's examining physicians. *Id.* at 1110 No documents by the treating physicians discussed the disability criteria at issue and they were incomprehensible and illegible. *Id.* at 1111.In contrast, the typed reports from the plan's examining physicians specifically addressed the objective medical

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                    Page 10
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

evidence requirement and the mental illness exclusion of the plan. The plan never provided its examining physician' reports to the plaintiff or his treating physician for comment. *Id.* at 1009. In essence, the claims process utilized by the plan denied the plaintiff the opportunity to demonstrate disability based on the facts being used by the plan.

*10 In *Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863 (9th Cir.2008),* the Ninth Circuit reiterated a plan's duty to have a meaningful dialogue with its beneficiary in deciding whether to grant or deny benefits. *Id.* at 878. In *Saffon,* the plan disregarded this responsibility by communicating directly with the plaintiff's doctors without advising the plaintiff of the communication. In addition, the plan took various doctors' statements out of context or otherwise distorted them in an apparent effort to support a denial of benefits. *Id.* The plan's letter to the treating doctor gave him 10 days to respond if he disagreed with a reviewing doctor's report, but this report was not sent to the plaintiff. *Id.* 878 n. 3 The doctor missed the 10-day deadline and, because Saffon was not notified, she was not in a position to urge him to timely respond or ask that the plan extend the deadline. *Id.* Finally, the plan tended to communicate with the plaintiff's primary care physician, who had very little to do with treatment for the plaintiff's back injury. The Ninth Circuit concluded by stating: "A doctor is not a lawyer; though he may provide information that is relevant to a claimant's disability, his actions (or inaction) cannot bind the client. If a claims administrator communicates with a doctor who has treated a beneficiary, it must disclose that fact to the patient at a meaningful time."*Id.*

Based on this authority, the court finds that the proposed testimony of Plaintiff's treating physicians is admissible *if* the administrative record was not fully developed. Plaintiff must first show from the administrative record that there was no "meaningful dialogue" with Plaintiff and/or Unum did not seek further information from Plaintiff's treating physicians and relied only on their brief

and vague records. Evidence outside the record may only be considered to show an abuse of discretion, and it is not admissible to show whether Defendant properly denied the benefits. Thus, Plaintiff may not provide evidence from his treating physicians unless Plaintiff provides an offer of proof from the administrative record showing how the record was not fully developed.

**ORDER**

Based on the above memorandum opinion, the court ORDERS that:

1. Plaintiff SHALL be allowed to present evidence of other court findings concerning Unum as part of the bench trial in this action.

2. Plaintiff is PRECLUDED from presenting evidence from Plaintiff and his treating physicians to the extent Plaintiff is introducing this evidence to show Plaintiff's disability.

3. Plaintiff is not precluded from introducing Plaintiff's and his treating physicians' testimony *if* Plaintiff can show that Unum failed to conduct a proper investigation.

4. The parties are ORDERED to meet and confer prior to March 16, 2009 to discuss how Plaintiff should present his arguments and evidence concerning the lack of a proper investigation.

*11 5. The court will hold a telephonic status conference on this matter for, the purpose of setting further dates, on March 16, 2009 at 2:30 p.m. The parties are DIRECTED to arrange for a conference call and call the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 565544 (E.D.Cal.)
(Cite as: 2009 WL 565544 (E.D.Cal.))

Page 11

court's polycom number at 559-499-5669.

IT IS SO ORDERED.

E.D.Cal.,2009.
Aluisi v. Elliott Mfg. Co., Inc. Plan
Slip Copy, 2009 WL 565544 (E.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**551 F.3d 126**
**John E. McCAULEY, Plaintiff-Appellant,**
**v.**
**FIRST UNUM LIFE INSURANCE COMPANY, Defendant-Appellee,**
**Sotheby's Holdings Inc., Sotheby's Inc., and Sotheby's Service Corp., Defendants.**
**Docket No. 06-5100-cv(L),**
**Docket No. 06-5529-cv (Con).**
**United States Court of Appeals, Second Circuit.**
**Argued: February 7, 2008.**
**Decided: December 24, 2008.**
**[551 F.3d 128]**

Eugene R. Anderson,(Dona S. Kahn, on the brief), Anderson Kill & Olick, P.C., New York, N.Y., for Plaintiff-Appellant.

Patrick W. Begos,(Evan L. Gordon, New York, N.Y., on the brief), Begos Horgan & Brown, LLP, Westport, CT, for Defendant-Appellee.

Before: WALKER, B.D. PARKER, and HALL, Circuit Judges.

JOHN M. WALKER, JR., Circuit Judge:

In light of the Supreme Court's decision in Metropolitan Life Insurance Co. v. Glenn, ___ U.S. ___, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), we must reassess our standard of review governing cases such as this one that challenge an Employee Retirement Income Security Act ("ERISA") plan administrator's decision to deny disability benefits, where the administrator has a conflict of interest because it has both the discretionary authority to determine the validity of the employee's claim and pays the benefits under the policy. Our current standard of review allows a court to review de novo the administrator's decision when it is shown that a conflict of interest actually influenced that decision. See Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1255-56 (2d Cir.1996). We find this standard to be inconsistent with the Supreme Court's instructions in Glenn and abandon it. We now adhere to the Supreme Court's clarified explication of the standard of review governing such cases, which is that such a conflict of interest is to be "weighed as a factor in

determining whether there [wa]s an abuse of discretion," Glenn, 128 S.Ct. at 2348 (quotation marks omitted) (emphasis in original). After applying this standard, we hold that, as a matter of law, the plan administrator abused its discretion in denying plaintiff's claim for long-term disability benefits.

BACKGROUND

Plaintiff-Appellant John McCauley ("McCauley") was a Senior Vice President and Director of the Tax Department at Sotheby's Service Corporation in April 1991, when he was diagnosed with advanced colon cancer. On April 24, 1991, he underwent a radical hemicolectomy and experimental chemotherapy, in which several gallons of special chemotherapy drugs were inserted into his peritoneal cavity to "bathe all the organs in the stomach cavity."

[551 F.3d 129]

McCauley's treatment also included intravenous chemotherapy and chemo catalyst drugs. These drastic procedures saved McCauley's life. From April 1991 through July 1991, McCauley took short-term disability leave because of his cancer treatment.

In December 1991, McCauley accepted a transfer within Sotheby's to Hamilton, Bermuda, where he worked as Senior Vice President and Chief Executive Officer of Fine Art Insurance, Ltd., a subsidiary of Sotheby's. Over the course of the next three years, McCauley continued to experience other health problems and took short term disability leaves. Specifically, in September

lastcase

1992, McCauley had part of his liver removed because his cancer had metastasized there. By December 1992, he suffered from a severe liver infection, and in April 1994, he underwent surgery to repair a hernia.

In November 1994, after notifying Sotheby's that he could no longer work, McCauley requested disability benefits. At that point, McCauley took short term disability leave one final time for a period of three months. Although McCauley's cancer treatment was successful, the procedures had taken a toll on his body. In particular, McCauley suffered from chronic diarrhea, chronic and acute renal impairment, incontinence, progressive vascular sclerosis, high cholesterol, insomnia, depression, and incisional scarring and pain. Defendant-Appellee First Unum Life Insurance Company ("First Unum") was Sotheby's disability insurance provider. Under the disability plan, First Unum was both the administrator and ultimate payor of benefits.

On May 19, 1995, First Unum denied McCauley's claim, and on June 14, 1995, McCauley appealed the decision and submitted additional information for First Unum to consider. On September 18, 1995, First Unum rejected McCauley's appeal. After this denial, McCauley, attempting to return to the workforce, accepted employment as General Counsel of IBJ Schroeder, Ltd. in Bermuda. Despite paying premiums on McCauley's policy with First Unum during his absence from the workforce, Sotheby's informed McCauley that it would stop paying those premiums now that he had other employment; however, Sotheby's informed McCauley that he was eligible to convert the policy and make future payments, which he did. McCauley's symptoms and health problems persisted. After working at several jobs for short periods of time, McCauley realized that he was not able to work. On January 16, 1996, he applied for long term disability benefits under his conversion policy. First Unum denied this claim on the basis that McCauley's employment with Sotheby's had terminated on November 26, 1994, and,

therefore, that he had exercised his conversion after the allowable period.

McCauley then brought this action alleging that First Unum had denied his claims under the original and conversion policies in bad faith. After taking discovery, First Unum moved for judgment on the administrative record. At the same time, McCauley moved for summary judgment under Federal Rule of Civil Procedure 56. Treating both requests as motions for summary judgment, the District Court for the Southern District of New York (Lawrence M. McKenna, J.) denied McCauley's motion and granted summary judgment in favor of First Unum, finding that a de novo standard of review was not applicable and that First Unum's actions were neither arbitrary nor capricious. McCauley v. First UNUM Life Ins. Co., No.,97 Civ. 7662, 2006 WL 2854162 (S.D.N.Y. Oct. 5, 2006). McCauley appeals from that dismissal.

[551 F.3d 130]

DISCUSSION

I. Legal Standard

We review de novo a district court's decision granting summary judgment in an ERISA action based on the administrative record and apply the same legal standard as the district court. Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir.1995); see also Glenn v. MetLife, 461 F.3d 660, 665 (6th Cir.2006). "Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fay v. Oxford Health Plan, 287 F.3d 96, 103 (2d Cir.2002).

The standard governing the district court's review, and accordingly our review here, of an administrator's interpretation of an ERISA benefit plan was first articulated by the Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court explained that "a denial of benefits ... is to be reviewed under a de novo standard unless the benefit plan gives the

administrator ... authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S.Ct. 948. Where such authority is given, the administrator's interpretation is reviewed for an abuse of discretion. Id. Furthermore, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Id. (quoting Restatement (Second) of Trusts § 187, cmt. d (1959)) (alteration in original).

Following the Court's instructions, we held in Pagan that in cases in which an abuse of discretion standard of review applies, because "written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" 52 F.3d at 441. We further noted that a possible conflict of interest would not alter the standard of review where the plaintiff "fails to explain how such an alleged conflict affected the reasonableness of the [administrator's] decision." Id. at 443. In Pagan, however, we did not address how a conflict of interest should be accounted for where it does affect the reasonableness of an administrator's interpretation. We answered that question in Sullivan v. LTV Aerospace & Defense Co., 82 F.3d at 1255-56, explaining that:

[I]n cases where the plan administrator is shown to have a conflict of interest, the test for determining whether the administrator's interpretation of the plan is arbitrary and capricious is as follows: Two inquiries are pertinent. First, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; second, whether the evidence shows that the administrator was in fact influenced by such conflict. If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo.

Id.

Sullivan implied that, in the absence of something more, the existence of a conflict of interest would not change the standard of review. And we squarely held in Pulvers v. First UNUM Life Insurance Co., 210 F.3d 89, 92 (2d Cir.2000), that the arbitrary and capricious standard continues to apply when the only evidence of a

[551 F.3d 131]

conflict of interest is that an insurer acts as both adjudicator and payor of claims.

Read together then, our case law made clear that the arbitrary and capricious standard applies "unless the [plaintiff] can show not only that a potential conflict of interest exists, ... but that the conflict affected the reasonableness of the [administrator's] decision." Sullivan, 82 F.3d at 1259 (internal quotation marks omitted). However, upon a showing that "the conflict affected the choice of a reasonable interpretation," the court interprets the plan de novo. Id. at 1255.

A. The District Court's Decision

Following this precedent, the district court turned to the question of whether de novo review was appropriate here. McCauley argued that certain procedural irregularities that occurred in the handling of his claim demonstrated that First Unum's conflict of interest had affected its decision to deny him benefits. These alleged irregularities included contentions that one document was missing from the administrative record and that First Unum had incorrectly told McCauley that his claim had been reviewed by a medical doctor when in fact it been reviewed by a nurse.

The district court found these allegations insufficient to warrant de novo review. McCauley, No. 97 Civ. 7662, 2006 WL 2854162, at *6. It noted that McCauley had failed to show any evidence indicating that First Unum lost the missing document in bad faith. Id. at *7. Regarding the discrepancy over whether a doctor or nurse reviewed the file, the district court found that, in denying his benefits, First



Unum had principally relied on the recommendation of McCauley's own physician that McCauley should not engage in heavy lifting or extreme physical exertion. This finding settled any concerns the district court had over whether First Unum consulted a physician before denying McCauley's claim. Id.

The district court next addressed whether McCauley had demonstrated that First Unum's decision was arbitrary and capricious. Id. at *8-9. After concluding that "documents submitted by [McCauley]'s own physician indicated that [McCauley] was not fully disabled," the district court held that, as a matter of law, First Unum's decision was reasonable. The district court therefore awarded summary judgment in its favor. Id. at *15.

McCauley then brought this appeal. While the appeal was pending in this court, the Supreme Court decided Glenn.

B. Metropolitan Life Insurance Co. v. Glenn

In Glenn, the Supreme Court clarified its earlier decision in Firestone. The Court noted that Firestone set forth four principles of review:

(1) In determining the appropriate standard of review, a court should be guided by principles of trust law ...[;] (2) Principles of trust law require courts to review a denial of plan benefits under a de novo standard unless the plan provides to the contrary[;] (3) Where the plan provides to the contrary by granting the administrator or fiduciary discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate[; and] (4) If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.

Glenn, 128 S.Ct. at 2347-48 (citing Firestone, 489 U.S. at 111-15, 109 S.Ct. 948)

[551 F.3d 132]

(quotation marks and alterations omitted) (emphasis in original).

After acknowledging these principles, the Court "directly focus[ed] upon the application and the meaning of the fourth [principle]." Id. at 2348. Addressing the question of "whether the fact that a plan administrator both evaluates ... and pays benefits claims creates the kind of 'conflict of interest' to which Firestone's fourth principle refers," the Court concluded that "it does." Id. at 2348. The Court reasoned that

[i]n such a circumstance, every dollar provided in benefits is a dollar spent by the employer; and every dollar saved is a dollar in the employer's pocket. The employer's fiduciary interest may counsel in favor of granting a borderline claim while its immediate financial interest counsels to the contrary. Thus, the employer has an interest conflicting with that of the beneficiaries, the type of conflict that judges must take into account when they review the discretionary acts of a trustee of a common-law trust.

Id. (internal quotation marks, alterations, and citations omitted). The Court then addressed the question of how this conflict should be taken into account upon judicial review of a discretionary benefit determination. See id. at 2350.

The Court clarified that under Firestone, such a "conflict should be weighed as a factor in determining whether there is an abuse of discretion." Id. (internal quotation marks omitted). In doing so, the Court rejected the notion that the conflict of interest justifies changing the standard of review from deferential to de novo. Id. It reasoned that "[t]rust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion." Id. The Court saw "no reason to forsake Firestone's reliance upon trust law in this respect." Id. Additionally, the Court

noted that it is neither "necessary [n]or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." Id. at 2351.

Our previous standard is now inconsistent with these instructions in one set of cases: When a plaintiff proves both that a conflict of interest exists and that this conflict affected the reasonableness of the administrator's discretionary decision. See Sullivan, 82 F.3d at 1255-56. We thus abandon the use of de novo review in these cases and set forth, in accordance with Glenn, the appropriate standard to be used in future cases.

C. The New Standard

According to principles of trust law, a benefit determination is a fiduciary act, and courts must review de novo a denial of plan benefits unless the plan provides to the contrary. See Glenn, 128 S.Ct. at 2347-48. However, where the plan grants the administrator discretionary authority to determine eligibility benefits, a deferential standard of review is appropriate. See id. at 2348. Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan, 52 F.3d at 442. "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." Pulvers, 210 F.3d at 92-93 (internal quotation

[551 F.3d 133]

marks and alteration omitted). "Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." Id. at 93 (internal quotation marks and alteration omitted).

Following Glenn, a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make de novo review appropriate. See Glenn, 128 S.Ct. at 2348. This is true even where the plaintiff shows that the conflict of interest affected the choice of a reasonable interpretation. See id.

"[W]hen judges review the lawfulness of benefit denials, they [should] take account of several different considerations of which a conflict of interest is one." Id. at 2351. The weight given to the existence of the conflict of interest will change according to the evidence presented. "[W]here circumstances suggest a higher likelihood that [the conflict] affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration," the conflict of interest

should prove more important (perhaps of great importance). .... It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Id.(citation omitted). As the Supreme Court has said, this "kind of review is no stranger to the judicial system," and judges will be able "to determine lawfulness by taking account of several different, often case specific, factors, reaching a result by weighing all together." Id.

In light of these changes, the question McCauley raised of whether the district court erred in refusing to review the benefit denial de novo is no longer pertinent. The question remains, however, whether the district court erred in finding that, as a matter of law, First Unum's denial was not arbitrary or capricious. We now turn to that question.

fastcase

## II. Weighing the Factors

### A. The First Benefit Denial

First Unum's long-term disability policy defines "disability" and "disabled" as follows:

"Disability" and "disabled" mean that because of injury or sickness:

1. the insured cannot perform each of the material duties of his regular occupation; or

2. the insured, while unable to perform all of the material duties of his regular occupation on a full time basis, is:

a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and

b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.

When McCauley first applied for long term disability benefits, First Unum requested additional information from his treating physician about his ability to perform his job duties in order to ascertain whether he qualified as disabled under the

[551 F.3d 134]

policy's definition. In response, McCauley's physician wrote that:

(1) [McCauley] is restricted to heavy lifting and extreme physical exertion. He also has limitations on increased workload secondary to fatigue syndrome, occasional nausea and pain in the right upper abdominal quadrant secondary to hepatic resection.

(2) [McCauley] is limited to extreme workload and increased hours due to fatigue, nausea and intermittent pain.1

The medical records before the administrator also showed that McCauley was "chronically stable" and that there was no "evidence of active cancer." Upon reviewing this information, a nurse employed by First Unum determined that the medical record "does not support total impairment." First Unum therefore concluded that McCauley was not disabled because his regular occupation as a tax attorney was sedentary. First Unum communicated this conclusion to McCauley in a letter stating:

[T]he medical information does not support an impairment of such severity that would preclude your ability to perform your occupation. [Your physician] restricted you from heavy lifting and extreme physical exertion. He also limited increased workload and increased hours. These restrictions and limitations would not prevent you from performing the material duties of your sedentary occupation.

Like the district court, we conclude that First Unum's initial denial is supported by the correspondence from McCauley's physician and other medical information in the administrative record. The record before First Unum at the time of the denial indicated that McCauley's cancer had been treated successfully and that his restrictions were limited to extreme workload, increased hours, heavy lifting, and extreme physical exertion. First Unum's denial under those circumstances was therefore not arbitrary and capricious.

First Unum's response also invited McCauley to send "new, additional information to support [his] request for disability benefits." First Unum stated that a request for review of its decision should be accompanied by his "comments and views of the issues, as well as any documentation [he] wish[es] First UNUM to consider." First Unum thus allowed McCauley to appeal its decision directly to First Unum and permitted him to submit additional information in support of his appeal. Accordingly, McCauley requested a review of the benefits denial, which was processed internally by a First Unum claims appeal specialist in coordination with the First Unum nurse who originally recommended that McCauley's claim be denied.



### B. McCauley's Appeal of the First Denial to First Unum

In support of his appeal to First Unum, McCauley submitted a letter challenging First Unum's findings. He made clear that he was not disabled because of active cancer but as a result of "the drastic measures used to effect a cure." Further, McCauley submitted additional evidence of his current medical issues in the form of a memorandum that he asserted was submitted with his physician's full knowledge and approval.

[551 F.3d 135]

Specifically, McCauley's memorandum lists his medical issues as (1) chronic diarrhea, (2) chronic and acute renal impairment, (3) progressive vascular sclerosis, (4) high cholesterol, (5) insomnia, and (6) incisional scarring and pain. With regard to his diarrhea, the memorandum states that McCauley is only able to control bowel movements by carefully timing his food ingestion and lists a number of ways in which this limits his daily activities. Respecting his renal impairment, the memorandum explains that McCauley has chronic blood in the urine and pain in the kidney area and that he forms a kidney stone every two weeks. As a result, his physician recommends that he not sit for long periods of time. Moreover, the memorandum states that during the acute phase of his renal impairment, "it is impossible for the patient to perform at any level." As to his vascular sclerosis, the memorandum explains that McCauley's vascular system was permanently damaged by the chemotherapy treatments and that he suffers "severe chronic headaches at the base of the skull, resulting in an inability to focus eyesight and a lack of concentration." His insomnia is described as "chronic and recurring," resulting in a "general feeling of lethargy and malaise" and leaving him with a "need to take naps during the day." The memorandum also states that McCauley "is in pain on an almost constant basis" and takes Percocet, an opiate, to manage that pain.

After receiving this information, First Unum again rejected McCauley's application. The nurse reviewing McCauley's file stated that "[n]o new medical ha[d] been submitted" and that the memorandum was "not an official document from [an] attending physician." However, when communicating this decision to McCauley, First Unum stated that it had rejected the health problems listed in McCauley's memorandum because "these conditions were acknowledged by your physician on the initial application and in his narrative letter of March 1995."

The reason First Unum gave to McCauley for rejecting the information provided in McCauley's memorandum was unreasonable and deceptive. Even the most cursory comparison with McCauley's earlier submission by a competent reviewer would have revealed the myriad of details about his condition, absent from the earlier submission, severely affecting his ability to work. And contrary to First Unum's representation, it appears the information was afforded little if any weight by the nurse considering his appeal because the memorandum was not signed by a physician. The rejection mischaracterizes the quality and detail of the evidence McCauley had submitted on appeal. This is so particularly because the new submission purported to be information that the physicians at Sloan-Kettering believed justified McCauley's request for disability.

First Unum never told McCauley that the absence of a physician's signature was a reason for rejecting his information. See Juliano v. Health Maint. Org. of N.J., Inc., 221 F.3d 279, 289 (2d Cir.2000) (finding an insurer's failure to communicate the reason for denying coverage sufficient evidence to warrant de novo review of the administrator's decision under our old standard). First Unum's response to McCauley implies that it would have been pointless to undertake any efforts to sort out the obvious and facial discrepancies in his record. Hiding behind a terse initial response to a set of questions it posed three months earlier, First Unum blithely ignored detailed descriptions constituting clear proof of total disability—apparent even to a lay



person—purporting to be the views of McCauley's physicians.

[551 F.3d 136]

Taken in combination, these factors are plainly exacerbated by First Unum's conflict of interest, as both administrator and payor, for what else would have influenced First Unum to avoid following up on simple inquiries prompted by McCauley's June submission? For example, had McCauley been informed that his physician's signature at the bottom of the memorandum was what was needed for First Unum's nurse to consider the information, he could have easily cured that defect. Additionally, McCauley's physician clarified in a deposition that he agreed with the health issues and limitations set forth in the memorandum, finding it to be "a very appropriate review of [McCauley's] medical status." Had he been apprised of them, McCauley plainly would have had no trouble addressing First Unum's undisclosed and uninvestigated concerns.

First Unum argues that it considered the information McCauley submitted, although it admits the nurse assigned to evaluate the claim on its medical merits did not consider the information. According to First Unum, the memorandum was accounted for by the claims appeal specialist, whose rejection of the memorandum was reasonable in light of McCauley's physician's earlier letter indicating that McCauley was only restricted from extreme workload and physical exertion. However, that letter, which simply provided brief answers to First Unum's medical questionnaire, differs starkly from the severe limitations and conditions depicted in the memorandum, which McCauley's physician later confirmed as accurate. The memorandum flatly contradicts First Unum's finding that McCauley was capable of performing a sedentary occupation and completing the ordinary tasks of a tax attorney. Instead, the memorandum stated that McCauley (1) was in constant pain, (2) had no control of his bowels, (3) was discouraged from sitting for long periods of time, (4) was unable to read for long periods of time, (5) required naps in the middle of the day, (6) passed two kidney stones per month at which time he would be unable to perform at any level, and (7) was required to take an opiate to manage his pain. First Unum never explained how McCauley could continue to perform the material duties of a tax lawyer despite these restrictions. Although First Unum stated that these issues described in the memorandum were considered in the original denial, the record plainly reflects that they were not.

The district court found that First Unum reasonably believed that McCauley's physician was aware of the conditions described in the memorandum at the time he set out McCauley's limitations in his letter to First Unum, and thus, that the document did not constitute new information. McCauley, No. 97 Civ. 7662, 2006 WL 2854162, at *10. For the reasons stated above, we disagree. It was unreasonable for First Unum to conclude that the conditions described in the memorandum were equivalent to those described in McCauley's first application. It was also unreasonable for First Unum to conclude that the conditions described in the memorandum did not render McCauley disabled from performing his regular occupation. In sum, we do not believe that a rational claims administrator could have reviewed the limitations and symptoms listed in the memorandum and found that the physician's earlier narrative comported with those medical conditions. At a minimum, further investigation was required.

Instead, First Unum seized upon the earlier questionnaire and ignored the memorandum. This kind of wholesale embrace of one medical report supporting a claim denial to the detriment of a contrary report that favors granting benefits was determined in Glenn to be indicative of an

[551 F.3d 137]

administrator's abuse of discretion. See 128 S.Ct. at 2352. The Glenn Court noted that there the insurance company unreasonably "emphasized a certain medical report that favored a denial of benefits [and] had


fastcase

deemphasized certain other reports that suggested a contrary conclusion." Id. The Court went on to find that this factor, in combination with the presence of a conflict of interest and other serious concerns, warranted setting aside the administrator's discretionary decision. Like the Court in Glenn, we find First Unum's reliance on the earlier narrative to be indicative of an abuse of discretion.

First Unum compounded its deception by representing to McCauley that the records submitted in support of his claim including the memorandum were reviewed by First Unum's on-site physician, who concluded that the restrictions and limitations would not preclude McCauley from performing his occupation. In fact, no records were reviewed by a physician at First Unum. These deceptions constitute additional powerful evidence that First Unum's denial of McCauley's appeal was arbitrary and capricious.

C. First Unum's Past History

This case also involves another relevant consideration specifically referenced in Glenn: "[W]here an insurance company administrator has a history of biased claims administration." Id. at 2351. First Unum is no stranger to the courts, where its conduct has drawn biting criticism from judges. A district court in Massachusetts wrote that "an examination of cases involving First Unum ... reveals a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics." Radford Trust v. First Unum Life Ins. Co., 321 F.Supp.2d 226, 247 (D.Mass.2004), rev'd on other grounds, 491 F.3d 21, 25 (1st Cir.2007). That court listed more than thirty cases in which First Unum's denials were found to be unlawful, including one decision in which First Unum's behavior was "culpably abusive." Id. at 247 n. 20. Also, First Unum's unscrupulous tactics have been the subject of news pieces on "60 Minutes" and "Dateline," that included harsh words for the company. Id. at 248-49. First Unum has fared no better in legal academia. See John H. Langbein, Trust

Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101 Nw. U.L.Rev. 1315 (2007). In light of First Unum's well-documented history of abusive tactics, and in the absence of any argument by First Unum showing that it has changed its internal procedures in response, we follow the Supreme Court's instruction and emphasize this factor here. Accordingly, we find First Unum's history of deception and abusive tactics to be additional evidence that it was influenced by its conflict of interest as both plan administrator and payor in denying McCauley's claim for benefits.

D. Summary Judgment

After reviewing all the evidence, we conclude that First Unum's denial of McCauley's appeal to First Unum was arbitrary and capricious. We thus find that the district court erred in granting summary judgment to First Unum and vacate the judgment. While ordinarily it would be appropriate for us to vacate and remand for further proceedings, there is no need to do so here because the evidence in the record conclusively shows that McCauley is entitled to judgment as a matter of law. See Glenn, 461 F.3d at 675 (reversing district court's award of summary judgment in favor of insurance company, granting summary judgment in favor of insured, and remanding to the district court for the reinstatement of retroactive

[551 F.3d 138]

benefits); Travelers Cas. & Sur. Co. v. Gerling Global Reins. Corp. of America, 419 F.3d 181, 194 (2d Cir.2005) (same but without mentioning retroactive benefits). In addition to the memorandum's description of McCauley's severe and debilitating health problems, the only physician's recommendation in the record—that made by Dr. Daugherty—supports a finding of disability.

To recap, we conclude the following: (1) First Unum operated under a conflict of interest because it was both the claims administrator and payor of benefits; (2) First Unum's reliance on one medical report in support of its denial to the

detriment of a more detailed contrary report without further investigation was unreasonable; (3) First Unum deceptively indicated to McCauley that the medical professional assigned to review his records was a medical doctor when the individual was in fact a nurse, failed to obtain a physician's recommendation, and mischaracterized its rationale for continuing to deny benefits; (4) First Unum has a well-documented history of abusive claims processing; and (5) observations (2), (3), and (4), above, collectively lead to the conclusion that First Unum was in fact affected by its conflict of interest. In light of these observations, we find that a reasonable trier of fact could only come to one conclusion: First Unum's denial was arbitrary and capricious. We award McCauley summary judgment in his favor. He is entitled to benefits and interest to run from September 18, 1995, the date on which First Unum rejected his appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED, and the cause is REMANDED to the district court to enter summary judgment in favor of appellant and for the calculation of benefits to be awarded to appellant. Costs of the appeal and attorney fees incurred in pursuit of benefits are awarded to appellant.

---------------

Notes:

1. We note that the physician's letter states that McCauley was restricted "to" heavy lifting and "to" extreme workload, which we can only presume was meant to read "from" heavy lifting and "from" extreme workload. Like the district court (and the subsequent First Unum letter to McCauley), we take the phrases to mean that McCauley was restricted from such activities.

---------------

