UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

NELVIS VELAZQUEZ, M.D.,           CASE NO. 08-22680-CIV-MORENO

      Plaintiff(s),

vs.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, ET. AL,

      Defendant(s).       /

**PLAINTIFF'S RESPONSE TO BRIEF OF CLAIMED LIEN RIGHTS OF MICHAEL A. TOBIN, P.A. AGAINST SETTLEMENT FUNDS**

    Plaintiff, Nelvis Velazquez, M.D., pursuant to this Court's Order Denying the Motion to Set Aside Final Order of Dismissal dated October 8, 2009, and the brief filed by Michael Tobin on October 21, 2009, files this Response to Brief of Claimed Lien Rights of Michael A. Tobin, P.A. Against Settlement Funds, and states:

**DELL & SCHAEFER'S HISTORY OF INVOLVEMENT WITH THIS CASE**

    Dr. Nelvis Velazquez (hereinafter "Velazquez") initially contacted Dell & Schaefer (hereinafter "DNS") on June 3, 2009, speaking with Robert Kerr, Esq., regarding her lawsuit against Provident. Dr. Velazquez had been informed the week earlier that Michael Tobin of Michael A. Tobin, P.A. (hereinafter referred to collectively as "Tobin") had voluntarily withdrawn from the case as of May 26, 2009. Following a review of documents provided and subsequent meetings with Velazquez, on June 12, 2009, DNS agreed to represent Velazquez despite knowledge of the

Scheduling Order entered by this Court on May 20, 2009, containing rapidly-approaching deadlines. DNS immediately filed its notice of appearance and set to work to meet the deadlines in the Scheduling Order and prepare for trial.

Subsequent to being retained, DNS was able to schedule the IME on June 18, 2009, prior to the June 30, 2009, deadline in the Scheduling Order. A day later, with agreed leave of opposing counsel, DNS filed an Amended Complaint alleging breach of contract in order to protect Velazquez's right to all benefits available under the contract, in contrast to the Complaint previously submitted by Tobin. In addition to having the IME conducted and the Complaint amended, DNS worked to complete discovery in a timely manner, given the short timeline within which to work.

Ultimately, DNS was able to schedule a mediation, during which the parties came to an agreement to settle the case, obviating the need for this Court's further involvement and handling of this case. As part of the mediation settlement, DNS agreed to withhold the portion of the settlement proceeds that Tobin has claimed as a lien. Only after learning the amount of the claimed lien was the remainder of Velazquez's portion of the settlement proceeds provided to her, thus protecting Tobin's claimed lien rights.

Tobin has filed a brief claiming a lien on the settlement proceeds, charging $500[1] per hour for the attorneys' time on this case, $100 per hour for the paralegal's time on this case, for total fees of 198.70 hours, equaling $78,890.00 in fees. In addition to this, Tobin claims $1,474.36 in costs.

## **MEMORANDUM OF LAW**

Michael Tobin abandoned Dr. Velazquez and voluntarily withdrew from the case. At the time of Mr. Tobin's withdrawal the defendant had made no settlement offers. An attorney who withdraws from a case is not entitled to benefits. In *Faro v. Romani*, 641 So. 2d 69 (Fla. 1994), the court stated:

> We hold that *when an attorney withdraws from representation upon his own volition, and the contingency has not occurred, the attorney forfeits all rights to compensation.*

(emphasis added.)

Federal court decisions accord with this decision and used this language in support of their decision. *See In re: Wilhelm*, 298 B.R. 464 (M.D. Fla. 2003) (quoting *Faro*). In the case at bar, Velazquez argues that Tobin withdrew from his representation of her of his own volition. At the time of withdrawal, the contingency – i.e. recovery of long-term disability benefits – had not yet occurred. Thus, according to the Supreme Court of Florida, he has forfeited all rights to compensation. While Tobin may argue he was discharged, this contention is not true, *infra*.

## ARGUMENTS

### Tobin Was Not Discharged From The Case By Velazquez And Withdrew Upon His Own Volition

Tobin's principal claim for fees is based on his discharge from the case by Velazquez after performing work on her case, justifying his lien on a quantum meruit basis. Tobin argues that because he was discharged from the case, rather than withdrawing voluntarily, he is entitled to fees. In Florida, where an attorney voluntarily withdraws representation from a case, they are not entitled to collect contingency fees on a quantum meruit basis. *Faro*, at 71. In an effort to collect something for the work he did, Tobin has attempted to prove that Velazquez discharged him, when in reality once the Court dismissed Counts II and III,[2] Tobin decided the case had minimal value and he decided to cut his losses and leave Velazquez to fight on her own behalf for her disability.

---

[1] It should be noted that this hourly rate exceeds Tobin's contracted-for rate of $450 per hour.
[2] The Court dismissed Counts II and III following oral argument by Mr. Tobin on May 19, 2009. *See* Docket Entry 23. If Mr. Tobin was allegedly fired on March 15, 2009, why did he continue to work on the file and show up in court to argue the Motion to Dismiss?

In particular, Tobin cites to a March 15, 2009, email from Velazquez to Tobin, purportedly discharging Tobin from the case. On March 19, 2009, Tobin allegedly[3] faxed to Velazquez a letter stating:

> We received your e-mail on March 15, 2009 setting forth your displeasure with and discharging our firm from the further handling of your case. We are filing our Motion to Withdraw. . . . Any further contact with this firm is inappropriate since we have accepted your notice of discharge. Please remit payment of the outstanding invoices and have your new attorneys contact us for the file transfer.

Thus, on March 19, 2009, Tobin was, in theory, no longer working on Velazquez's case. However, Tobin's subsequent actions belie the true course of events and provide evidence that a) Tobin had no intention of stopping work on this case; and b) Velazquez never intended her email to serve as a notice of discharge.

Following the March 19, 2009, letter "accepting" Velazquez's discharge, Tobin continued to bill for his work done on Velazquez's case. A list of fees Tobin is claiming following the March 15, 2009, discharge is attached as Exhibit "A."

This time totals 21 hours spent by Tobin or his paralegal's hours, totaling $9,900 in fees, allegedly spent by Tobin after he received his notice of discharge and responded to the email he claims was the source of his discharge. It is disingenuous to argue that he is entitled to this time while at the same time claiming to have been discharged on March 15, 2009. If Tobin did, in fact, believe that he had been discharged on this date, there would have been no reason for him to work on the file in a substantive manner, as he clearly did according to his billing. Of note, included in this

---

[3] Dr. Velazquez informed DNS during her initial call to the firm that, unbeknownst to her, Tobin had filed the Motion to Withdraw, and that she was informed of his withdrawal by Barry Stein. That her first notice of withdrawal was in May 2009, and the March 19, 2009, letter is not signed calls into question whether the March 19, 2009, letter was ever sent to or received by Velazquez. Certainly her pattern of behavior, i.e. contacting DNS within days of learning of Tobin's withdrawal, would indicate that had she been aware of Tobin's intent to withdraw on March 19, 2009, she would have contacted another lawyer shortly after being informed that she had purportedly discharged Tobin via her March 15, 2009, email, rather than waiting until June 3, 2009, to do so. Copies of email between Velazquez, Tobin, and Stein documenting her first notice of withdrawal are attached as Exhibit "B."

time billed is a March 24, 2009, entry "Prepare letter to client regarding past due invoices in the amount of $601.73;". If Tobin had thought he had been discharged, it would have been more appropriate for him to have sent Velazquez a bill for his time to date.

In addition to this work performed after the alleged discharge, presented as evidence that Tobin never truly interpreted the March 15, 2009, email from Velazquez as a discharge is a time entry on this date in response to this email: "Review e-mail from client re: Rule 26 Disclosure and client's threats of Bar complain re: Rule 26 Disclosure;". His time entry mentions nothing with respect to this email acting as a discharge of his services.

Tobin's continued work on the case provides clear evidence that he either a) did not consider the email a discharge of his services, contrary to his unsigned March 19, 2009, letter, or b) he continued to work on the file in violation of his ethical duties. Velazquez's never discharged Tobin. *See* Velazquez Affidavit attached as Exhibit "C." Tobin was not the same lawyer she hired prior to his suspension.[4] *See* Velazquez Affidavit. Contrary to paragraph 2 of the Motion for Leave to Withdraw, it is clear that Velazquez never asked Tobin to withdraw. He continued to work on the case for several months after the March 15, 2009, email.

Mr. Tobin finally withdrew from the case officially by submitting his Motion to Withdraw on May 26, 2009. This action was taken shortly after the Counts II and III were dismissed from the Complaint. Count II, for Breach of Covenant, Good Faith and Fair Dealing, and Count III, for Racketeering Influenced Corrupt Organization [sic], each carrying the possibility for significantly greater recovery, and thus were dismissed on May 21, 2009. This action by the Court left only Count

---

[4] Another consequence of Tobin's suspension between September 27, 2008, and December 26, 2008, was the need to rely on his paralegal to accomplish his work. The only time billed by Tobin's paralegal prior to his suspension was on August 12, 2008, for 1.9 hours, to collate the exhibits to the Complaint. The remainder of the paralegal's time was billed after Tobin returned from his suspension in January 2009. Velazquez should not be penalized by having to pay for Tobin's assistant to perform duties she previously did not and that he is unable or unwilling to do following his suspension.

I of the Complaint for Individual Disability Insurance Benefits upon which Velazquez could recover. After seeing that his potential recovery on a contingency basis was greatly diminished by the dismissal of Counts II and III, Tobin decided to officially withdraw on May 26, 2009.

If this Court finds that Velazquez did discharge Tobin, he should have withdrawn shortly after the March 15, 2009, letter, in accordance with Tobin's March 19, 2009, response to Velazquez's email. Instead, Tobin elected to incur additional costs. Tobin also decided to stay involved in the case until it was clear that he would not be able to collect significantly more than he would have been able to recover under the contingency fee agreement Velazquez signed.

**Tobin Had Another Attorney Working On The File Who Does Not Have The Experience To Merit A $500 Per Hour Rate While He Was Suspended**

Included within Tobin's Velazquez Timesheet documenting the purported time spent on this case are entries by an attorney, "RDT," presumably Richard D. Tobin, by whom the March 19, 2009, letter accepting Tobin's discharge was written.[5] Richard Tobin accumulated 27.2 hours working on this case, amounting to $13,600 in fees, working at a rate of $500. These fees amount to nearly one-quarter of the bill submitted documenting Tobin's lien.

Richard Tobin's practice areas, as indicated on the Florida bar website, are as follows: Real Property; Probate; Trust Law.[6] Richard Tobin does not indicate that one of his specialties is Disability law, or even Insurance law. Thus, Tobin delegated nearly 20% of the attorney work on this case to someone it appears has no experience dealing with disability policies or insurance contracts. This lack of experience cannot rationally support the hourly fee of $500 for the work done by Richard Tobin on Velazquez's case. Richard Tobin's work, not surprisingly, appears to have been

---

[5] As noted previously, the copy of the letter attached as an exhibit to Tobin's Brief and allegedly sent to Velazquez is unsigned.
6 Richard Tobin's profile is available at
http://www.floridabar.org/names.nsf/0/79269E40387E9FA185256A84001CD217?OpenDocument.

for naught, as his work in defending Counts II and III did not prevent these counts from ultimately being dismissed.

Another fact worth noting is that $12,300 of the $13,600 billed by Richard Tobin for the work in this case was performed between September 27, 2008, and December 12, 2008. During this time Michael Tobin was suspended from the practice of law by the Supreme Court of Florida for failing to, on at least three separate occasions, respond to an Order to Show Cause, resulting in an Order of Contempt being filed against him. Tobin was subsequently suspended from the practice of law for 90 days.

### Tobin Failed To Attach The Affidavit Of An Expert Justifying His Fees

This Court has held that the party seeking fees has the burden to justify their fees. *See Ellis v. Freeman*, 1988 U.S. Dist. LEXIS 16984 (S.D. Fla. Feb. 29, 1988) ("The burden of substantiating an attorney's fee is on counsel seeking the fee."). *See also Brake v. Murphy*, 736 So. 2d 745 (Fla. 3d DCA 1999) ("[F]ees cannot be assessed based solely on the testimony of the attorney claiming the fee, but rather expert testimony must be offered substantiating the fee.). In the brief filed by Tobin, no affidavit has been attached, and this Court has the authority to dismiss Tobin's claimed lien for failure to provide substantiation for the fees and costs claimed. *See also ACLU v. Barnes*, 168 F.3d 423 (11th Cir. 1999).

### Tobin's fees include time billed for work done that was
### a) not pertinent to this case,
### b) excessive in relation to the task performed, and
### c) was not necessary in the prosecution of this case

Review of the Velazquez Timesheet submitted with Tobin's brief includes a multitude of items that are inappropriately billed to Velazquez in the representation of her claim for long-term

disability benefits. The charges and reasons these are inapplicable to Tobin's claimed lien are outlined below.

**a)   Numerous entries are not pertinent to Tobin's representation of Velazquez in her claim for long-term disability benefits.**

Tobin was hired to represent Velazquez in pursuit of her long-term disability benefits. However, Tobin has provided detail for each of his timesheet entries that clearly have no bearing on this claim. Instead, they deal with issues surrounding her landlord-tenant dispute with her landlord. Tobin has listed voluminous billing entries that are not related to her claim for disability benefits, and have no bearing on her claim. This list of billing entries is attached as Exhibit "D."

As this Court will note, many of these charges pertain to Velazquez's case against NRD Investments, which is a landlord-tenant action. While related to this case in terms of causation of Velazquez's injuries, these billing entries have nothing to do with her claim for long-term disability benefits. In addition to billing for time that is irrelevant, Tobin bills for time he spent prior to the filing of the complaint. He should not be entitled to compensation for pre-suit billing that was unnecessary.

Tobin is billing Velazquez $26,050.00 for 68.5 hours spent by he and his staff on time that had no relevance to the matter for which he was hired. Tobin is not entitled to work done outside the scope of his representation. *See, e.g., Morgan v. Turgeon*, 755 So. 2d 161 (Fla. 4th DCA 2000).

**b)   Tobin billed excessively relative to the task performed.**

Tobin billed 19 hours for preparation of the complaint. Two of the three counts were improperly brought and ultimately dismissed. This case is simple: Provident breached their contract to pay Velazquez disability benefits under the contract they issued to her. Any experienced disability attorney would have recognized this from the outset and would not have spent more than two hours

preparing and filing the complaint. Tobin has grossly exaggerated the amount of time it should have taken him to prepare a complaint that would remedy the wrong Velazquez experienced at the hand of Provident. Velazquez should not have to pay for Tobin's inappropriately filing Counts II and III of the Complaint.

Tobin also claims to have spent 2.5 hours reviewing the surveillance tape of the incident that resulted in Velazquez's injuries. Tobin's paralegal also billed 2.5 hours for review of the same tape. Both of these billing entries occurred on February 9, 2009. *The very next day*, they billed another 4.5 hours for reviewing the videotape again.

It should be noted that there is less than 30 minutes of video to be reviewed. Even if it were appropriate for both Tobin and his assistant to each bill for their time in reviewing the same videotape, it could not possibly have taken 2.5 hours for each of them to do so. Moreover, it would have been entirely unnecessary to spend another 4.5 hours the next day to review the minimal footage again. Tobin has inflated his time and hours to recoup an excessive fee based on the services provided.

**c)   Tobin billed for actions he never should have taken**.

As outlined previously, Tobin should have known, as a purported experienced long-term disability attorney, Velazquez's only cause of action was for breach of contract. Counts II and III should never have been put forth as causes of action, as they were not viable. In doing so, Tobin performed actions for which he proposes to bill Velazquez that should never have been a part of this suit. He should not be able to recover fees for any of the work involved in these counts because they were unnecessary. *See Ass'n of Disabled Am. v. Neptune Designs, Inc.*, 469 F.3d 1357 (11th Cir. 2006) ("[W]here the factual record supports a finding that the plaintiff filed or maintained a suit unnecessarily, a district court may properly consider such a finding in setting the amount of attorney

fees."). Had Tobin put forth the proper cause of action and nothing superfluous, the numerous timesheet entries would not have been necessary. *See* Exhibit "E."

These billing entries would never have been necessary if Tobin had the experience to deal with Velazquez's policy and the breach of contract appropriately. Instead, Tobin attempted to bring causes of action that had no support – as evidenced by their later dismissal – resulting in another $9,400 worth of fees that he is now claiming he is owed for his work.

**Tobin's Actions Severely Prejudiced Velazquez's Claim For Benefits Under The Policy**

While representing Velazquez, Tobin counseled her to not attend the IME scheduled for her by the defendant. Florida courts have held that an IME is a condition precedent to suit. *See Goldman v. State Farm Fire General Ins. Co.*, 660 So. 2d 300 (Fla. 4th DCA 1995). Failure to attend the IME could have resulted in the case being dismissed and no benefits awarded for failure to satisfy this condition precedent. *See Goldman*; *Stringer v. Fireman's Fund Ins. Co.*, 622 So. 2nd 145 (Fla. 3d DCA 1993). Indeed, this was the basis for the defendant's Motion for Summary Judgment filed on August 21, 2009:

> In this motion, Defendants establish the following as a matter of law, based on the lack of genuine dispute as to the material facts: ***Plaintiff Velazquez is not entitled to benefits under her policy with Provident because her refusal to submit to an Independent Medical Examination was a failure of a condition precedent to the insurer's obligation for payment of benefits under the policy***.

(emphasis added.)

Velazquez followed the advice of Tobin and did not attend the original IME as scheduled. Tobin's negligence in advising Velazquez to not attend an IME resulted in Velazquez being forced to settle her claim in order to avoid summary judgment. Velazquez was forced to settle her claim for approximately $260,000 less than the policy's value. Specifically, Tobin cost Velazquez the following non-taxed dollar amounts:

| | | | |
|---|---|---|---|
| Monthly benefits until the day of mediation: | 29 months X $7,000/month | = | $203,000 |
| Policy premiums paid that should have been waived: | 5 months X $1,124.59/month | = | $5,622.95 |
| Unreimbursed expenses for rehabilitation | | = | $21,000 |
| **TOTAL:** | | | **= $229,622.95** |

Also, in Tobin's representation of Velazquez, he filed a deficient complaint that could have left Velazquez without any recourse from the Court. In the original Complaint, Tobin plead for total disability benefits, neglecting the possibility that a jury could find her residually disabled since she continued to work on a limited basis. Velazquez could have had a loss of income prior to the date she stopped working completely in April of 2007. Subsequent to DNS's representation of Velazquez, DNS filed an amended complaint praying for all benefits available to her under the policy, thus allowing her to recover under either the Total or Residual Disability definitions in the policy. Tobin's failure to include a prayer for this relief could have foreclosed her ability to collect these benefits to which she otherwise would have been entitled.

## CONCLUSION

Tobin voluntarily withdrew and was not discharged by Velazquez. Tobin abandoned Velazquez after Counts II and III were dismissed subsequent to his alleged discharge. Tobin's claimed hours and attorneys fees are excessive and unsupported. Tobin's negligent representation subjected Velazquez to summary judgment and a substantial reduction in the value of her claim. Tobin is not entitled to any attorney fee award as a matter of law.

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so.

/s/ Gregory M. Dell
GREGORY MICHAEL DELL

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Mark D. Greenberg, Esq., Carlton Fields P.A., 4000 International Place 100 S.E. Second Street, Miami, FL  33131-2114 on this 13th day of August, 2009.

ATTORNEYS DELL & SCHAEFER CHARTERED
Attorneys for Plaintiff
2404 Hollywood Boulevard
Hollywood, FL  33020
(954) 620-8300

/s/ Gregory M. Dell
GREGORY MICHAEL DELL,
Florida Bar No.: 299560
gdell@diattorney.com